## MACNEALE et al. v. LALANCE & GROSJEAN MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3540.

**1. Patents ⬳216—Seller of machines liable under contract for expense of defending infringement suit against purchaser.**

Under a provision of a contract for the sale of machines that the seller would on notice, at its own expense, defend any suits that might be brought "for alleged infringement of any electrical or mechanical patents relating to the machines" sold, it is not a defense to an action by the purchaser to recover the expense incurred in defending against an in-

fringement suit which the seller failed to defend on notice and request that the machines sold were adapted to other uses which did not infringe the patent sued on, where that was the use for which they were made, equipped, and sold, or that the suit was based on the product of the machines and not on the machines themselves, or that the suit was dismissed on objections to jurisdiction and not on the merits, especially where a motion for preliminary injunction was also heard.

2. **Corporations** ⬤══619—On voluntary dissolution under Ohio statute directors hold assets first for benefit of creditors.

On voluntary dissolution of a corporation under Gen. Code Ohio, § 8742, the directors become trustees for both creditors and stockholders, and, if they distribute the assets to stockholders before paying obligations of the corporation under its contracts, they are personally liable on such contracts.

In Error to the District Court of the United States, for the Western Division of the Southern District of Ohio; John W. Peck, Judge.

Action at law by the Lalance & Grosjean Manufacturing Company against Neil Macneale and others. Judgment for plaintiff, and defendants bring error. Affirmed.

The plaintiffs in error were directors of the Toledo Electric Welder Company, an Ohio corporation, at the time that corporation was dissolved by the voluntary surrender of its charter and the distribution of its assets, January 9, 1917, and as such directors became trustees for creditors and stockholders of the dissolved corporation to the extent of the assets coming into their hands.

On the 4th day of March, 1915, and prior to its dissolution, the Toledo Electric Welder Company sold the Lalance & Grosjean Manufacturing Company, the defendants in error, three spot welding machines of different sizes and specifications. The terms and conditions of each written contract of sale contained among other provisions the following:

"The company agrees that it shall, at its own expense, defend any suits that may be instituted by any party against the purchaser for alleged infringement of any electrical or mechanical patents relating to the machinery furnished under this proposal, provided the purchaser shall have made all payments then due therefor and gives to the company immediate notice in writing of the institution of such suits, and permits the company, through its counsel, to defend the same, and gives all needed information, assistance and authority to enable the company to so do, and thereupon in case of final award of damages in such suit the company will pay such award."

On June 12, 1917, the American Electric Welding Company and the Thomson Electric Welding Company filed in the District Court of the United States for the District of Massachusetts a bill of complaint against the Lalance & Grosjean Manufacturing Company for the infringement of letters patent No. 1,046,066, known as the Harmatta patent, alleging that the defendants in that suit had sold electrically welded articles covered by said Harmatta letters patent and embodying the invention therein recited and included within the aforesaid field of articles under said patent exclusively granted by mesne assignment to the American Electric Welding Company, and praying for an injunction and an accounting of profits.

The Lalance & Grosjean Manufacturing Company filed a motion to quash the service of process and dismiss the bill of complaint for the reasons that it had no regular and established place of business within the district of Massachusetts; that it did not appear that its acts of infringement had been in said district; that service had not been made on any agent of the defendant conducting business for it in said district; and that the service of the order to show cause against a preliminary injunction was insufficient. Affidavits in support of this motion were also filed.

⬤══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On the 11th day of August, 1917, this motion came on to be heard with plaintiff's motion for a preliminary injunction, which hearing resulted in an order and decree by that court sustaining the motion of the defendants to quash the service and dismissing the bill of complaint for want of jurisdiction of the defendant.

This defendant in error expended in defending against that suit in the District Court of Massachusetts the sum of $6,572 in costs and expenses and payment of counsel fees.

On the 7th day of October, 1920, the defendant in error, Lalance & Grosjean Manufacturing Company, filed its petition in the United States District Court for the Southern District of Ohio, Western Division, against these plaintiffs in error, to recover, among other things, the money it had expended as above stated, in defending itself against the infringement suit brought against it by the American Electric Welding Company and the Thomson Electric Welding Company in the District Court of the District of Massachusetts. It also sought to recover in this action money expended by it in defense of an action brought by the American Welding Company against the Jordan Marsh Company of Boston, Mass., one of its customers, for a like infringement; but that District Court held that it was not entitled, under the terms and conditions of its written contract, to recover the expense of that suit, and the defendant in error has not prosecuted a cross-petition to reverse that judgment.

In addition to the facts above stated, the petition of the Lalance & Grosjean Manufacturing Company further averred that it had made all payments due under these contracts; that it had given immediate notice in writing of the institution of said suit to the Toledo Electric Welder Company, and would permit it to defend the same and would give it all needed information, assistance, and authority to enable that company to do so; and that thereafter it gave to each of the defendants like notice, but that the Toledo Electric Welder Company and the defendants failed, neglected, and refused to defend said suit.

The plaintiffs in error filed an answer to this petition admitting the corporate capacity of the plaintiff and the Toledo Electric Welder Company; the dissolution of the Toledo Electric Welder Company on February 7, 1917; that these defendants and Frank Warren, now deceased, were directors of the Toledo Electric Welder Company acting last before the time of dissolution of said company; that assets of said company in excess of $30,000 came into the hands of said defendants and said Frank Warren as such directors; that in the year 1915 the Toledo Electric Welder Company sold certain electric spot welding machines to plaintiff and that the plaintiff had paid in full therefor; that plaintiff advised these defendants and attempted to advise the Toledo Electric Welder Company, after its dissolution, of the institution of the suit by the American Electric Welding Company and the Thomson Electric Welding Company against the plaintiff in the District Court of the United States and that plaintiff advised these answering defendants and attempted to advise the dissolved corporation that it would permit them through their counsel to defend said suit and would give all needed assistance and authority to enable it to do so, and for want of information sufficient therefor to base belief, denied each and every other allegation of the petition not expressly admitted. Upon the issue so joined the jury returned a verdict for the plaintiff for the sum of $6,572. A motion for new trial was overruled and judgment was entered upon the verdict.

The plaintiffs in error are now asking a reversal of this judgment for the reasons:

(1) The Harmatta patent was not one relating to the machinery furnished.

(2) The machinery furnished was adapted to uses within the field of electric welding outside of the limited field of electric welding known as spot welding.

(3) The Harmatta patent did not cover the whole field of electrical spot welding, but only single processes within that field. The machines were adapted to do electric spot welding not covered by Harmatta patent.

Joseph S. Graydon, of Cincinnati, Ohio (Maxwell & Ramsey and Burton P. Hollister, all of Cincinnati, Ohio, on the brief), for plaintiffs in error.

Edward Colston, of Cincinnati, Ohio (Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, and Masten & Nichols, of New York City, on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge (after stating the facts as above). [1] In the determination of these questions it is wholly unimportant whether the Harmatta patent is a valid one or whether the use of the machines sold by the Toledo Electric Welder Company to the Lalance & Grosjean Manufacturing Company actually infringed the Harmatta patent. By the terms of the contract sued upon, the Toledo Electric Welder Company agreed at its own expense to defend any suits that might be instituted by any party against the Lalance & Grosjean Manufacturing Company for alleged infringement of any electrical or mechanical patent relating to the machinery furnished. This, of course, included all suits of this character regardless of the merits, and regardless of the failure or success of such suits. The question here is whether the suit brought upon this patent in the District Court of Massachusetts was a suit based upon the claim of alleged infringement of any electrical or mechanical patent relating to the machinery furnished. If it was such a suit, then these plaintiffs in error, under this contract, were called upon to defend, although they might have successfully defended upon either one of the propositions now advanced.

Upon a careful reading of the complaint in that case, it is clear that there can be but one answer to this question. That suit was based upon the validity of the Harmatta patent and the infringement thereof by this defendant in error in that it had sold electrically welded articles embodying the invention of the Harmatta patent as therein recited and included within the articles under said patent exclusively granted to the plaintiff, the American Electric Welding Company. It is admitted that the spot welding of these articles was accomplished by the use of the machines purchased by Lalance & Grosjean from the Toledo Electric Welder Company, and that when so purchased these machines were equipped to do this particular kind and character of spot welding. It would seem to be clear that a patent which would prevent the use of a machine in the expected way or prevent the sale of the product made upon the machine in the expected way was and is a patent relating to the machinery furnished. The contract of sale and purchase did not limit the obligation of the seller to defend suits charging infringements of patents covering machinery only, but broadly included alleged infringements of any electrical patent or any mechanical patent relating to the machinery furnished. Certainly a patent covering the product of a machine is a patent relating to that machine.

The case of Thomson Electric Welding Co. v. Barney & Berry, Inc., 227 Fed. 428, 142 C. C. A. 124, was similar in character to the suit against the defendant in error in the District Court of Massachusetts.

In that action, the United States Circuit Court of Appeals of the First Circuit held the Harmatta patent valid and infringed by the use and sale of skates, parts of which were welded with the Toledo machine.

The Lalance & Grosjean Manufacturing Company was charged with like infringement of this same patent by like methods and was confronted with the possibility of a like judgment being entered against it. It is therefore clear that this was a suit for "an alleged infringement of an electrical or mechanical patent relating to the machinery furnished," within not only the letter, but the meaning, of that contract. The opportunity was afforded to these plaintiffs in error to defend against that suit and prove that the allegations of the complaint were not true. It would seem unnecessary to say that they cannot make the defense in this suit that they could have made and should have made in that one. The contract does not call for defending suits for actual infringement only, but for alleged infringement. The plaintiffs in error cannot now be permitted to plead and prove as a defense in this case, that the allegations contained in that complaint were untrue.

It is said, however, that the machinery could be used to do butt welding and for other processes of spot welding not within the Harmatta patent. While the evidence offered does not support these contentions, nevertheless, if these claims were admitted to be true, they would constitute no defense to plaintiffs' action. The evidence is uncontradicted, however, that these machines were not adapted for butt welding, but it is argued that the witness meant only that they were not equipped for butt welding; that they could easily have been so equipped by the removal of the pointed electrodes and the substitution of other electrodes suitable for butting the ends of bars together. That may be true, nevertheless the machines were sold as spot welding machines and were equipped with pointed electrodes not only suitable, but specifically adapted to the same process of spot welding as the processes purporting to be covered by the Harmatta patent. The fact that they were so equipped with pointed electrodes when they were sold and delivered to the purchaser is sufficient to show that they were sold by the Toledo Company and purchased by the Lalance & Grosjean Manufacturing Company for the purpose of being used for that particular kind of spot welding.

Not only that, but they were designated in the contract of sale as spot welding machines. There is therefore absolutely no force in the claim that the defendants below were not required by these contracts to defend against a suit for the infringement of a patent covering this particular form of spot welding which the machines were adapted and equipped to do at the time of their sale and delivery, merely because the purchaser might, by changing their equipment, have used them for other forms of spot welding than those purported to be covered by the Harmatta patent and which other forms of spot welding the defendant in error in the course of its business may or may not have had need or occasion to do.

It is further insisted that no recovery could be had against these plaintiffs in error for the reason that under the terms of the contract they were not required to assume the defense of a suit for infringe-

ment where the only question presented to the court was raised by the defendant's plea to the jurisdiction. This claim on behalf of the plaintiffs in error overlooks the fact that the complainants in that suit filed a motion for a preliminary injunction and that this preliminary injunction came on to be heard in connection with defendant's motion to quash service of process.

It is true that under the terms of this contract the Toledo Company, or these plaintiffs as trustees, had a right to elect whether they would try this case upon its merits or upon the motion to dismiss for want of jurisdiction. They may have preferred a hearing upon the merits to a dismissal of the case, and, in such event, they would have had the right, had they asserted it, to choose their own line of defense. The letter of June 28th not only contained a notice of the bringing of this suit, but also the fact that notice of a motion for preliminary injunction was served upon the defendant. This letter also requested the Toledo Company to assume the defense of this suit without expense to the Lalance & Grosjean Manufacturing Company. Had the Ohio company been in existence at that time and had it appeared and elected to defend the suit upon its merits, it could have required the Lalance & Grosjean Company to withdraw this motion to quash or to prosecute it at its own expense. The Ohio corporation having been dissolved, these defendants as trustees for the creditors of the defunct corporation could have assumed and exercised the same control of this case, regardless of any theory that the Lalance & Grosjean Company may have had in reference to the kind or character of defense that should be made. This they did not do. So far as this record discloses, they neither defended nor offered to defend. Upon the failure of the Toledo corporation or of these plaintiffs in error to appear and assume the defense of this case, the Lalance & Grosjean Manufacturing Company had the right to make any and all defenses that in its judgment seemed right and prudent to make. These plaintiffs in error cannot now be heard to say they would have made some other defense. In any event, this motion to dismiss was not the only defense made in that suit, for it also appears that the motion for a temporary injunction was heard in connection with the motion to dismiss.

It is also insisted that the notice attempted to be served upon the Toledo Company and actually served upon these plaintiffs in error was defective in that it failed to advise that a motion to dismiss had been filed. They admitted in their answer that the defendant in error served a notice of the pendency of this suit upon these plaintiffs in error. Therefore there was no issue raised by the pleading as to notice or the sufficiency of notice. It is insisted, however, in view of the fact that it now appears that the motion to dismiss was sustained and the case was never heard upon its merits, the plaintiffs in error should have been permitted to amend their answer in that respect. This court is of the opinion, however, that the notice was sufficient for all the purposes of this case. It gave to these plaintiffs in error the opportunity to do the thing that the company they represented had agreed to do; nevertheless they wholly failed and neglected even to com-

municate with this defendant in error, much less offer to take charge of the defense.

[2] It is suggested, however, that the Ohio corporation having been dissolved and the assets of that company distributed, there was no one to perform the obligation of this contract on the part of the Toledo Company, and that these plaintiffs in error had no money of the company at their disposal to pay the expense of such defense. Nevertheless, as directors of the Toledo Company at the time that corporation was dissolved, plaintiffs became and were trustees, not only for its stockholders but for creditors, of the assets coming into their hands as such directors. Section 8742, Ohio G. C. If they distributed these assets to its stockholders before the payment of its creditors, or the performance of the obligations of its contracts, they did so at their own risk. They were fully advised by the suit of the American Electric Welding Company against Barney & Berry, Inc., that suits of this character were being brought. They knew or ought to have known that it was the duty of the company under its contracts to defend and to pay damages awarded, and being in control of the corporate assets, they should have applied the same to this purpose. They cannot now be heard to defend upon the theory that at the time that action was brought they had no assets of the company in their hands with which to pay the expenses of defending the suit or reimburse the defendant in error for the money expended by it in making such defense.

For the reasons above stated judgment is affirmed.